J-S01041-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: M.M.L.R., A MINOR | : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: K.L.A. & P.O.R., NATURAL PARENTS | : : | No. 1322 MDA 2017 |

Appeal from the Decree Entered July 27, 2017
In the Court of Common Pleas of York County
Orphans' Court at No(s):  2017-0072

| | | |
|---|---|---|
| IN RE: ADOPTION OF: C.J.I.R., A MINOR | : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: K.L.A. AND P.O.R., NATURAL PARENTS | : : | No. 1323 MDA 2017 |

Appeal from the Decree Entered July 27, 2017
In the Court of Common Pleas of York County
Orphans' Court at No(s):  2017-0084

BEFORE:  GANTMAN, P.J., MURRAY, J., and MUSMANNO, J.

MEMORANDUM BY GANTMAN, P.J.:                **FILED FEBRUARY 06, 2018**

Appellant's, K.L.A. ("Mother") and P.O.R. ("Father"), appeal from the decrees entered in the Court of Common Pleas of York County Orphans Court Division, which granted the petitions of the York County Offices of Children Youth and Families ("CYF") for involuntary termination of Mother

and Father's parental rights to their minor children, M.M.L.R. and C.J.I.R. ("Children") and changed the goal for M.M.L.R. to adoption. We affirm.

In May 2016, Children Youth and Families ("CYF") received a referral about M.M.L.R. At birth, M.M.L.R. was placed on a feeding tube and hospital staff immediately had concerns about parents' ability to feed and care for the child. CYF obtained an emergency protective custody order on May 23, 2016, and the court ordered M.M.L.R. placed in foster care when released from the hospital. CYF visited the home, which was in deplorable condition.

On May 26, 2016, the court held a shelter care hearing and awarded legal and physical custody of M.M.L.R. to CYF. The court adjudicated M.M.L.R. dependent on July 27, 2016. While the proceedings were ongoing, Mother became pregnant and gave birth to parents' second child, C.J.I.R. C.J.I.R. was immediately placed in the same foster home as M.M.L.R. and adjudicated dependent on May 5, 2017. CYF filed a petition for a goal change and for involuntary termination of parents' parental rights to M.M.L.R. on May 4, 2017; on June 1, 2017, CYF filed a petition for involuntary termination of parents' parental rights to C.J.I.R. The court held a termination hearing on July 19, 2017. At the conclusion of the hearing, the court entered separate decrees (filed July 27, 2017) granting involuntary termination of parents' parental rights to Children. On August 2, 2017, the court changed the goal of M.M.L.R. to adoption. The initial goal for C.J.I.R. was adoption, so there was no goal change ordered for C.J.I.R. Parents

timely filed notices of appeal from the termination decrees at No. 1322 MDA 2017 regarding M.M.L.R. and at No. 1323 MDA 2017 regarding C.J.I.R. Parents also filed Rule 1925 statements on August 23, 2017. On August 24, 2017, Parents timely filed a notice of appeal from the goal change order regarding M.M.L.R. at No. 1329 MDA 2017, with a Rule 1925 statement. On September 14, 2017, this Court *sua sponte* consolidated the termination appeals at Nos. 1322 and 1323 MDA 2017, at journal number J-S01041-18, and listed the related goal-change appeal consecutively at journal number J-S01042-18. Nevertheless, Parents raise identical issues in both cases.

Parents raise four issues for our review:

WHETHER THE TRIAL COURT ERRED IN CHANGING THE GOAL FROM REUNIFICATION TO ADOPTION?

WHETHER THE TRIAL COURT ERRED IN TERMINATING THE PARENTAL RIGHTS OF MOTHER AND FATHER PURSUANT TO SECTIONS 2511(A)(1), (2), (5) AND (8) OF THE ADOPTION ACT?

WHETHER THE TRIAL COURT ERRED IN CONCLUDING THAT TERMINATION OF PARENTAL RIGHTS WOULD BEST SERVE THE NEEDS AND WELFARE OF THE CHILDREN PURSUANT TO SECTION 2511(B) OF THE ADOPTION ACT?

WHETHER THE TRIAL COURT ERRED IN TERMINATING THE PARENTAL RIGHTS OF MOTHER AND FATHER IN LIGHT OF THE AGE OF THE MINOR CHILDREN?

(Parents' Brief at 14).

On appeal, goal change decisions are subject to an abuse of discretion standard of review. *In re N.C.,* 909 A.2d 818, 822 (Pa.Super. 2006).

In order to conclude that the trial court abused its

discretion, we must determine that the court's judgment was manifestly unreasonable, that the court did not apply the law, or that the court's action was a result of partiality, prejudice, bias or ill will, as shown by the record. We are bound by the trial court's findings of fact that have support in the record. The trial court, not the appellate court, is charged with the responsibilities of evaluating credibility of the witnesses and resolving any conflicts in the testimony. In carrying out these responsibilities, the trial court is free to believe all, part, or none of the evidence. When the trial court's findings are supported by competent evidence of record, we will affirm, even if the record could also support an opposite result.

*Id.* at 822-23 (internal citations and quotation marks omitted).

The Juvenile Act controls the disposition of dependent children. *In re R.P.*, 957 A.2d 1205, 1217 (Pa.Super. 2008). Section 6351 provides in relevant part:

**§ 6351. Disposition of dependent child**

\* \* \*

**(f) Matters to be determined at permanency hearing.**—At each permanency hearing, a court shall determine all of the following:

(1) The continuing necessity for and appropriateness of the placement.

(2) The appropriateness, feasibility and extent of compliance with the permanency plan developed for the child.

(3) The extent of progress made toward alleviating the circumstances which necessitated the original placement.

(4) The appropriateness and feasibility of the current placement goal for the child.

(5)    The likely date by which the placement goal for the child might be achieved.

(5.1) Whether reasonable efforts were made to finalize the permanency plan in effect.

(6)    Whether the child is safe.

*    *    *

(9)    If the child has been in placement for at least 15 of the last 22 months or the court has determined that aggravated circumstances exist and that reasonable efforts to prevent or eliminate the need to remove the child from the child's parent, guardian or custodian or to preserve and reunify the family need not be made or continue to be made, whether the county agency has filed or sought to join a petition to terminate parental rights and to identify, recruit, process and approve a qualified family to adopt the child unless:

(i)    the child is being cared for by a relative best suited to the physical, mental and moral welfare of the child;

(ii)    the county agency has documented a compelling reason for determining that filing a petition to terminate parental rights would not serve the needs and welfare of the child; or

(iii)    the child's family has not been provided with necessary services to achieve the safe return to the child's parent, guardian or custodian within the time frames set forth in the permanency plan.

*    *    *

**(f.1) Additional determination.**—Based upon the determinations made under subsection (f) and all relevant evidence presented at the hearing, the court shall determine one of the following:

(1)  If and when the child will be returned to the child's parent, guardian or custodian in cases where the return of the child is best suited to the safety, protection and physical, mental and moral welfare of the child.

(2)  If and when the child will be placed for adoption, and the county agency will file for termination of parental rights in cases where return to the child's parent, guardian or custodian is not best suited to the safety, protection and physical, mental and moral welfare of the child.

(3)  If and when the child will be placed with a legal custodian in cases where the return to the child's parent, guardian or custodian or being placed for adoption is not best suited to the safety, protection and physical, mental and moral welfare of the child.

(4)  If and when the child will be placed with a fit and willing relative in cases where return to the child's parent, guardian or custodian, being placed for adoption or being placed with a legal custodian is not best suited to the safety, protection and physical, mental and moral welfare of the child.

\*    \*    \*

**(f.2) Evidence.**—Evidence of conduct by the parent that places the health, safety or welfare of the child at risk, including evidence of the use of alcohol or a controlled substance that places the health, safety or welfare of the child at risk, shall be presented to the court by the county agency or any other party at any disposition or permanency hearing whether or not the conduct was the basis for the determination of dependency.

**(g)   Court order.**—On the basis of the determination made under subsection (f.1), the court shall order the continuation, modification or termination of placement or other disposition which is best suited to the safety, protection and physical, mental and moral welfare of the child.

42 Pa.C.S.A. § 6351(f), (f.1), (f.2), (g).

"When the child welfare agency has made reasonable efforts to return a [dependent] child to [the child's] biological parent, but those efforts have failed, then the agency must redirect its efforts towards placing the child in an adoptive home." *In re N.C., supra* at 823 (citing *In re G.P.-R.*, 851 A.2d 967, 973 (Pa.Super. 2004)).

> Although the agency has the burden to show a goal change would serve the child's best interests, "[s]afety, permanency, and well-being of the child must take precedence over **all** other considerations" under Section 6351. *In re D.P.*, 972 A.2d 1221, 1227 (Pa.Super. 2009), *appeal denied*, 601 Pa. 702, 973 A.2d 1007 (2009) (emphasis in original); *In re S.B.*, 943 A.2d 973, 978 (Pa.Super. 2008), *appeal denied*, 598 Pa. 782, 959 A.2d 320 (2008). "[T]he parent's rights are secondary" in a goal change proceeding. *In re D.P., supra*.
>
> Because the focus is on the child's best interests, a goal change to adoption might be appropriate, even when a parent substantially complies with a reunification plan. *In re N.C., supra* at 826-27. Where a parent's "skills, including her judgment with regard to the emotional well-being of her children, remain problematic[,]" a goal change to adoption might be appropriate, regardless of the parent's compliance with a permanency plan. *Id.* at 825. The agency is not required to offer services indefinitely, where a parent is unable to properly apply the instruction provided. *In re A.L.D.*, 797 A.2d 326, 340 (Pa.Super. 2002). *See also In re S.B., supra* at 981 (giving priority to child's safety and stability, despite parent's substantial compliance with permanency plan); *In re A.P.*, 728 A.2d 375, 379 (Pa.Super. 1999), *appeal denied*, 560 Pa. 693, 743 A.2d 912 (1999) (holding where, despite willingness, parent cannot meet "irreducible minimum parental responsibilities, the needs of the child must prevail over the rights of the parent"). Thus, even where the parent makes earnest efforts, the "court cannot and will not subordinate indefinitely a child's need for permanence and

stability to a parent's claims of progress and hope for the future." *In re Adoption of R.J.S.*, 901 A.2d 502, 513 (Pa.Super. 2006).

*In re R.M.G.*, 997 A.2d 339, 347 (Pa.Super. 2010), *appeal denied*, 608 Pa. 648, 12 A.3d 372 (2010) (some internal citations and quotation marks omitted).

Appellate review of termination of parental rights cases implicates the following principles:

> In cases involving termination of parental rights: "our standard of review is limited to determining whether the order of the trial court is supported by competent evidence, and whether the trial court gave adequate consideration to the effect of such a decree on the welfare of the child."

*In re Z.P.*, 994 A.2d 1108, 1115 (Pa.Super. 2010) (quoting *In re I.J.*, 972 A.2d 5, 8 (Pa.Super. 2009)).

> Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. … We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.
>
> *In re B.L.W.*, 843 A.2d 380, 383 (Pa.Super. 2004) (*en banc*), *appeal denied*, 581 Pa. 668, 863 A.2d 1141 (2004) (internal citations omitted).
>
> Furthermore, we note that the trial court, as the finder of fact, is the sole determiner of the credibility of witnesses and all conflicts in testimony are to be resolved by the finder of fact. The burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so.

> ***In re Adoption of A.C.H.***, 803 A.2d 224, 228 (Pa.Super. 2002) (internal citations and quotation marks omitted). The standard of clear and convincing evidence means testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue. ***In re J.D.W.M.***, 810 A.2d 688, 690 (Pa.Super. 2002). We may uphold a termination decision if any proper basis exists for the result reached. ***In re C.S.***, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*). If the court's findings are supported by competent evidence, we must affirm the court's decision, even if the record could support an opposite result. ***In re R.L.T.M.***, 860 A.2d 190, 191-92 (Pa.Super. 2004).

***In re Z.P., supra*** at 1115-16 (quoting ***In re Adoption of K.J.***, 936 A.2d 1128, 1131-32 (Pa.Super. 2007), *appeal denied*, 597 Pa. 718, 951 A.2d 1165 (2008)).

CYF filed a petition for the involuntary termination of Parents' parental rights to Children on the following grounds:

> **§ 2511.  Grounds for involuntary termination**
>
> **(a)   General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> > (1)  The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
> >
> > (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

- 9 -

* * *

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

* * *

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

* * *

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (a)(2), (a)(5), (a)(8), and (b). "Parental rights

may be involuntarily terminated where any one subsection of Section 2511(a) is satisfied, along with consideration of the subsection 2511(b) provisions." *In re Z.P., supra* at 1117.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of [the parent's] parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (internal citations omitted).

> Termination under Section 2511(a)(1) involves the following:

> > To satisfy the requirements of [S]ection 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. In addition,

> > > Section 2511 does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child and refusal or failure to perform parental duties. Accordingly, parental rights may be terminated pursuant to Section 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to perform parental duties.

> > Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for [the parent's] conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*In re Z.S.W.*, 946 A.2d 726, 730 (Pa.Super. 2008) (internal citations omitted). Regarding the six-month period prior to filing the termination petition:

> [T]he trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of [the parent's] parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

*In re B.,N.M.*, 856 A.2d 847, 855 (Pa.Super. 2004), *appeal denied*, 582 Pa. 718, 872 A.2d 1200 (2005) (internal citations omitted).

The grounds for termination of parental rights under Section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary those grounds may include acts of refusal as well as incapacity to perform parental duties. *In re A.L.D., supra* at 337. "Parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities." *Id.* at 340. The fundamental test in termination of parental rights under Section 2511(a)(2) was long ago stated in the case of *In re Geiger*, 459 Pa. 636, 331 A.2d 172 (1975), where the Pennsylvania Supreme Court announced that under what is now Section 2511(a)(2), "the petitioner for involuntary termination must prove (1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal

caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *In Interest of Lilley*, 719 A.2d 327, 330 (Pa.Super. 1998).

"Termination of parental rights under Section 2511(a)(5) requires that: (1) the child has been removed from parental care for at least six months; (2) the conditions which led to removal and placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child." *In re Z.P., supra* at 1118.

"[T]o terminate parental rights under Section 2511(a)(8), the following factors must be demonstrated: (1) [t]he child has been removed from parental care for 12 months or more from the date of removal; (2) the conditions which led to the removal or placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child." *In re Adoption of M.E.P.*, 825 A.2d 1266, 1275-76 (Pa.Super. 2003). "Section 2511(a)(8) sets a 12–month time frame for a parent to remedy the conditions that led to the children's removal by the court." *In re A.R.*, 837 A.2d 560, 564 (Pa.Super. 2003). Once the 12–month period has been established, the court must next determine whether the conditions that led to the child's removal continue to exist, despite the reasonable good faith efforts of the Agency supplied over a realistic time. *Id.* Termination under Section 2511(a)(8) does not require the court to

- 13 -

evaluate a parent's current willingness or ability to remedy the conditions that initially caused placement or the availability or efficacy of Agency services. *In re Adoption of T.B.B.*, 835 A.2d 387, 396 (Pa.Super. 2003); *In re Adoption of M.E.P., supra*.

Under Section 2511(b), the court must consider whether termination will meet the child's needs and welfare. *In re C.P.*, 901 A.2d 516, 520 (Pa.Super. 2006). "Intangibles such as love, comfort, security, and stability are involved when inquiring about the needs and welfare of the child. The court must also discern the nature and status of the parent-child bond, paying close attention to the effect on the child of permanently severing the bond." *Id.* Significantly:

> In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship.
>
> When conducting a bonding analysis, the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation.

*In re Z.P., supra* at 1121 (internal citations omitted).

"The statute permitting the termination of parental rights outlines certain irreducible minimum requirements of care that parents must provide for their children, and a parent who cannot or will not meet the requirements within a reasonable time following intervention by the state, may properly be considered unfit and have [the parent's] rights terminated." *In re B.L.L.*,

- 14 -

787 A.2d 1007, 1013 (Pa.Super. 2001). This Court has said:

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this [C]ourt has held that the parental obligation is a positive duty which requires affirmative performance.
>
> This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.
>
> Because a child needs more than a benefactor, parental duty requires that [parent's must exert themselves] to take and maintain a place of importance in the child's life.
>
> Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of [the parent's] ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

*In re B.,N.M., supra* at 855 (internal citations omitted). "[A] parent's basic constitutional right to the custody and rearing of [the parent's] child is converted, upon the failure to fulfill [the parent's] parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." *Id.* at 856.

After a thorough review of the record, the briefs of the parties, the

applicable law, and the well-reasoned opinion of the Honorable Kathleen J. Prendergast, we conclude Parents' issues merit no relief. The Orphans Court opinion comprehensively discusses and properly disposes of the questions presented. (*See* Orphans' Court Opinions, filed July 27, 2017, at 1-13 and September 21, 2017, at 2-7) (finding: **(1)** in deciding to change M.M.L.R.'s goal to adoption, court considered number of factors including child's need for stability, consistency, and permanency to best serve child's needs; for all reasons that follow regarding termination of parents' parental rights, changing goal to adoption was proper; **(2)** court focused on Sections 2511(a)(2), (5), and (8); notwithstanding their best efforts, parents are unable to care for Children; both parents were incapable of caring for Children when common events occurred, such as Children becoming sick, and parents required constant supervision; testimony from multiple witnesses indicated parents most likely cannot ever reach point where they could care for Children without supervision; parents have below average capacity to parent; CYF has provided services for over one year but parents have been unable to show significant improvement in their parenting abilities; conditions which led to M.M.L.R.'s removal continue to exist, such as severe environmental issues, parenting skills, and ability to meet Children's needs on regular basis; M.M.L.R. has special needs that parents cannot address and which require early intervention; C.J.I.R. has been in foster care since birth; Mother has been unable to reach point where she can

be unsupervised with Children for specific period of time; parents were unable to handle incident where one child was vomiting; becoming sick is common and foreseeable circumstance; parental inability to address that issue without supervision indicates to court that Children are without essential parental care and control; parents' decisions regarding housing and pets in home creates questions about their ability to provide ongoing, appropriate environment for Children; despite best efforts of Catholic Charities team, parents were unable to make significant progress with issues they needed to address; continued services will unlikely aid parents; parents lack basic skills such as changing diapers without prompting and engaging in appropriate activities with Children; M.M.L.R. has been in care for over 12 months; conditions which led to her removal continue to exist; C.J.I.R. has been in care almost 12 months, since three weeks after her birth; court will not find Section 2511(a)(8) applies to C.J.I.R. since she has not been in foster care for more than 12 months, but court can glean from record that parents will be unable to remedy conditions which led to removal of C.J.I.R. as well; based on parents' intellectual limitations, they cannot meet Children's needs at this point in time; **(3)** parents are living in maternal grandmother's home which is in poor condition; Catholic Charities tried to address some hygiene issues such as pet feces on floor, urine in bottles, and sewage everywhere; Children have developed close bond with foster parents, who have become Children's primary caretakers; familiarity bond

between M.M.L.R. and Mother is similar to bond between M.M.L.R. and caseworker; it would be detrimental to pull M.M.L.R. from foster parents' care; Children are bonded to foster parents; foster parents have been primary caregivers for both Children; termination of parents' parental rights will serve Children's best interests **(4)** given young age when Children were placed into foster care, Children have developed close bond only with their foster parents; M.M.L.R. has some bond of familiarity with Mother; Father has even less bond with M.M.L.R. due to Father's unwillingness or inability to interact with her).  Accordingly, we affirm based on the Orphans' Court's opinions.

Decrees affirmed.

Judgment Entered.

_Joseph D. Seletyn_
Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>02/06/2018</u>

**IN THE COURT OF COMMON PLEAS OF YORK COUNTY, PENNSYLVANIA**

| | | | |
|---|---|---|---|
| **In the Interest Of:** | : | | |
| **M.M.L.R.** | : | No. | CP-67-DP-155-2016 |
| | : | | |
| **Minor** | : | **Change of Goal** | |

**IN THE COURT OF COMMON PLEAS OF YORK COUNTY, PENNSYLVANIA**
**ORPHANS' COURT DIVISION**

| | | | |
|---|---|---|---|
| **In re: Adoption of:** | : | | |
| **M.M.L.R.** | : | No. | **2017-0072** |
| **C.J.I.R.** | : | No. | **2017-0084** |
| | : | | |
| **Minors** | : | **Termination of Parental Rights** | |

**OPINION IN SUPPORT OF ORDER PURSUANT TO Pa.R.A.P. No. 1925(a)**

Appellants,                          : ("Mother") and }

("Father"), appeal to the Superior Court of Pennsylvania the Judgment entered by this

Court on July 27, 2017. On August 23, 2017, pursuant to Pa.R.A.P. No. 1925(a)(2)(i),

Mother and Father filed a Statement of Errors Complained of on Appeal ("Statement").

Pursuant to Pa.R.A.P. No. 1925(a)(2)(ii), the Court issues the following Opinion.

**PROCEDURAL HISTORY**

On July 25, 2017, a Petition to involuntarily terminate the parental rights of the

parents over the children,                          (M.M.L.R) and (

(C.J.I.R.), was ordered by this Court. On July 31, 2017, the

Court granted the York County Office of Children Youth and Families' (hereinafter

"CYF" or "the Agency") Petition to change the court-ordered goal from reunification

with a parent to placement for adoption for M.M.L.R. Mother and Father filed a Notice

of Appeal for both orders on August 23 and 24, 2017. This Opinion follows.

## DISCUSSION

The reasons for this Court's Order granting the Petition to change the court-ordered goal from reunification with a parent to termination of parental rights and placement for adoption and petition to involuntarily terminate the parental rights of the parents of the Children already appear of record in the July 27, 2017 Opinion and Order ("Opinion"). The Court's decision is consistent with the weight of the evidence provided at trial and now it supplements its Opinion with the following to address each issue raised.

1. The first issue raised is whether there was an error in changing the goal from reunification to adoption.

The standard of review for a challenge to a trial court's order changing the goal of a dependent child to adoption is abuse of discretion. In re N.C., 2006 PA Super 285, ¶ 11, 909 A.2d 818, 822 (Pa. Super. Ct. 2006) *citing* In re G.P.-R., 2004 PA Super 205, 851 A.2d 967, 973 (Pa. Super. Ct. 2004). The trial court must be upheld unless the "court's judgment was manifestly unreasonable, that the court did not apply the law, or that the court's action was a result of partiality, prejudice, bias or ill will, as shown by the record." Id. at 823. The reviewing court is "bound by the trial court's findings of fact that have support in the record." Id.

On review, the Superior Court has stated that, "[t]he trial court must focus on the child and determine the goal with reference to the child's best interests, not those of the

2

parents." In re S.B., 208 Pa.Super. 21, 943 A.2d 973, 978 (2008). The "safety, permanency, and well-being of the child must take precedence over all other considerations." In re N.C., 909 A.2d at 823. "Further, at the review hearing for a dependent child who has been removed from the parental home, the court must consider the statutorily mandated factors." Id.

In reaching the determination to change the Court Ordered Goal to adoption, the Court cited a number of factors, including the need for the child to have stability, consistency, and permanency to serve the best interest of the child who the Court ruled for a change of goal, M.R. While this factor was listed first on the 1925(a) form filed, it really should be considered last. All of the reasons stated for the termination below relate to the change of goal and do not need to be repeated. It does not make sense to have a goal as anything other than adoption when the children have been in a stable foster home and the rights of the parents have been terminated.

2. The second issue raised was whether the court erred in terminating the parental rights of Mother and Father pursuant to Sections 2511(a)(1), (2), (5), and (8) of the Adoption Act.

The standard of review by the Superior Court of an appeal from a decree terminating parental rights is limited to determining whether the decision of the trial court is supported by competent evidence. In re K.C.W., 456 Pa.Super. 1, 689 A.2d 294, 298 (1997). Absent an abuse of discretion, an error of law, or insufficient evidentiary support

3

for the trial court's decision, the decree must stand. Id. Where a trial court has granted a petition to involuntarily terminate parental rights, the Superior Court must accord the trial judge's decision the same deference given to a jury verdict. In re Child M., 452 Pa.Super. 230, 681 A.2d 793, 800 (1996). The Superior Court employs a comprehensive review of the record to determine whether the trial court's decision is supported by competent evidence. In re Matsock, 416 Pa.Super. 520, 611 A.2d 737, 742 (1992). The "[p]ermissible grounds for involuntary termination of parental rights are specified in 23 Pa.C.S.A. § 2511," as discussed above. In re C.S., 2000 PA Super 318, ¶¶ 8-9, 761 A.2d 1197, 1199–200 (Pa. Super. Ct. 2000).

Under 23 Pa.C.S. §2511, the court may terminate the rights of a parent if any one of the eleven factors exist. This Court stated that they were going to focus primarily on §2511(a)(2),(5), and (8). (Opinion, page 3.) As discussed in the Opinion, this case was not a case of the parents willfully neglecting their children, but rather a case where, despite the best efforts of the services being provided, the Mother could not care for the children. (Id.) Section 2511(a)(2) discusses a reason for the termination of parental rights to be the repeated and continued incapacity of a parent that has caused the child to go without essential parental care needed for the child's physical or mental wellbeing that cannot be remedied by the parent. Both parents were incapable of caring for the children when common events, such as the child becoming sick, occurred and needed constant supervision. (Id.) There was testimony by many of the caregivers that the parents will

4

most likely never be able to get to the point where they can sufficiently care for the children without supervision. (Id. at 5.) Therefore, this Court feels as though the necessary grounds exist under this section to terminate the parental rights in regards to both children.

Section 2511(a)(5) indicates that if the conditions that which lead to the removal or placement of a child with an agency exists for a period of at least six months after the child has been removed, and the parents cannot remedy those conditions within a reasonable time, then termination may be best to serve the needs of the children. The Opinion outlines and points to example after example of services and reports that indicate that Mother and Father have below the average capacity as parents. (Id.) The parents have had over a year worth of services that have not been able to yield to any significant improvement in their parenting abilities. (Id. at 5-6.) Therefore, this Court feels as though the necessary grounds exist under this section to terminate the parental rights in regards to both children.

Section 2511(a)(8) indicates that if the children have been removed or have been place with an agency for a period of 12 months or more and the conditions which led to the removal or placement continue to exist, then termination of parental rights would best serve the needs and welfare of the child. In regards to child, M.R., the conditions that have led to her removal continue to exist, such as severe environmental issues, parenting skills issues, and the ability to have her needs met on a regular basis. (Id. at 7.) M.R.

5

also has special needs that are not being addressed at home and require Early Intervention. (Id.) Child, C.R., has been placed with the agency since birth, which has not quite been 12 months. (Id.) Therefore, this Court feels it has met the necessary grounds for child, C.R., but not child, M.R. under this factor.

Since 23 Pa.C.S. §2511 only requires that one of the factors is met, this Court feels as though it has successfully moved in the best interests of the child and did not err in terminating the parental rights.

3.     The third issue raised was whether there was an error in concluding that termination of parental rights would best serve the children under Section 2511(b) of the Adoption Act. As outlined in the Opinion on page 8, the Court believes that terminating the parental rights would be the best option for the children at this time.

Under 23 Pa.C.S. §2511(b), the court must give primary consideration to the developmental, physical, and emotional needs and welfare of the children, and the rights of the parents cannot be terminated solely on a basis of environmental factors if they are beyond the control of the parent. In this case, the parents are living in maternal grandmother's home which is in poor condition, to say the least. (Id. at 8-9.) Services, such as Catholic Charities tried to address some of the hygiene issues, but only so much could be done when, throughout the entire home, there were pet feces on the floor, urine in bottles, and sewage everywhere. (Id. at 9.) Furthermore, the children have developed a close bond with the foster parents, as the foster parents have become their primary

6

caretakers. (Id.) M.R.'s bond with Mother is nothing more than the bond M.R. has with the caseworker. (Id. at 10.) Therefore this Court feels as if it would be detrimental to pull her from such a close bond.

4. The fourth issue raised was whether there was an error in terminating the parental rights of Mother and Father in light of the age of the children. It is precisely the child's age that makes this Court feel as though the child's best interests are termination of parental rights. Due to the very young age that the children began their time with the foster family, both children have developed a very close bond with their foster parents. (Id.) The bond that the caseworker has described between the M.R. and Mother, in particular, is nothing more than a familiarity bond. (Id.) Father and M.R. have even less of a bond due to Father's unwillingness or inability to interact with her. (Id.)

## CONCLUSION

In changing the dependent Children's permanency goals to adoption and terminating the parental rights of Appellants, the Court respectfully submits that there was no abuse of discretion or error as a matter of law. This Court relies on its ruling from July 19, 2017. This Court respectfully requests that the Superior Court find the matters Appellants complain of meritless and affirm this Court's Order.

BY THE COURT:

_____

7

Dated: September **21**, 2017     KATHLEEN J. PRENDERGAST, JUDGE

    The Prothonotary is directed to serve copies of this order on Counsel for the parties and the Agency, as required by law.

IN THE COURT OF COMMON PLEAS OF YORK COUNTY,

PENNSYLVANIA

| | | |
|---|---|---|
| In the Interest of | : | CP-67-DP-0000155-2016 |
| | : | 2017-0072 |
| [M.R.] and | : | |
| [C.R.], | : | CP-67-DP-0000138-2017 |
| | : | 2017-0084 |
| Minors | : | |

York, Pa., Wednesday, July 19, 2017

Before the Honorable Kathleen J. Prendergast, Judge

APPEARANCES:

        MARTIN MILLER, Esquire
        For York County Office of Children,
        Youth & Families

        KAREN COMERY, Esquire
        Guardian Ad Litem
        For the Minors

        KATHERINE DOUCETTE, Esquire
        For the Mother and Father

ALSO PRESENT:

        MARLA SPEIR, Caseworker

\*   \*   \*

<u>ORDER AND OPINION</u>

There are two issues before the Court

1

today as well as two children, we have a termination of parental rights and change of goal for [M.R.], we have a termination of parental rights for [C.R.] but not a change of goal, as her goal is already adoption, and we have a status conference with regard to both children. I will be addressing each of those issues at this point.

Also, with regard to the termination of parental rights, that relates to the termination of rights of Mother as well as the termination of rights of Father for both children. I just want to be sure that I touch on all of those issues. I'm going to start with termination of parental rights, as that will affect all of the other issues the Court is going to address.

The Court has no question that both parents love both of these children. The question before the Court though is are they now or would they be at some reasonable point in the future able to care for these children full time.

Specifically, grounds for involuntary termination are found at 23 Pa.C.S. Section 2511, and the Court may terminate rights of a parent if they find only one of any of the following grounds that may exist in this case. The Court is going to specifically

2

address Section (a)(2), (5) and (8).

Section (2) says the repeated and continued incapacity, abuse, neglect or refusal of a parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

Especially in the case of Mother, the Court commends her for her efforts. This is not a case, especially with Mother, of will not but perhaps a case of cannot. Despite the services that have been provided, Mother has not been able to get to a position where she could be unsupervised with the children for any specific period of time.

The Court especially finds the testimony with regard to when the child vomited to be disturbing from a point of view of the ability of the parents to move forward with substantial, unsupervised time. A child being physically ill is a common and foreseeable circumstance in which a child may find themselves. The parents' inability to address that issue without supervision indicates to the Court that their current

3

incapacity that they cannot address or have not been able to address affects their ability to parent and provides a situation where the children are without essential parental care and control in those circumstances.

Other circumstances relate to the housing issue, their ability to address their relationship issues as it affects their parenting, decisions to have pets, like bunnies and snakes, at a time when they may not be able to meet their own needs creates questions about their ability to provide an ongoing, appropriate environment for the children.

Therefore, the Court does find that the conditions to terminate parental rights under (a)(2) exist at this time.

Section (5) indicates that a child has been removed from the care of a parent by the Court under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continues to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parents are not

4

likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

As previously noted in the report by Dr. Gransee on page 10 of Exhibit 6, he notes that with regard to Father "his capacity to parent seems compromised and well below average and it is likely the case that he will continue to make immature judgments and to evince immature emotional and behavioral functioning regardless of any interventions."

While that report was done in 2016, Catholic Charities was put in place to attempt to provide such interventions. Despite the best efforts of the Catholic Charities team, unfortunately the parents were not able to make significant progress with regard to the issues they needed to address. Additionally, it is unlikely that continued services are unlikely to do so.

The Catholic Charities team opened May 20th of 2016. Ms. Ohl was there six hours a week working with the parents and has been unable to even bring them to the point where they can be unsupervised

5

for any significant period of time. It is unlikely that her continued involvement will bring them to a point where within a reasonable time they will be able to address the issues that led to the placement.

Specific examples were noted during her testimony with regard to again the relationship issues between the parents, inability to address issues relating to basic parenting skills, like diaper changes, without prompting, and engaging in other appropriate activities with the children.

Therefore, the Court finds that grounds also exist under (a)(5).

(A)(8) indicates that a child has been removed from the care of a parent by the Court or under a voluntary agreement with the agency, 12 months or more have elapsed from the date or removal of placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

With regard to [M.R.], she has been in care for a period of 12 months. The conditions which led to her removal continue to exist based on the

testimony. Specifically, those conditions were pretty severe environmental issues at the grandmother's house, parenting skills issues with regard to the parents and the ability to have her needs met on a regular basis.

Additionally, with [M.R.], she has some special needs that required Early Intervention that were not being appropriately addressed at the time that she came into care and the Court questions whether the parents have the ongoing ability to meet her special needs going forward.

With regard to [C.R.], she came into care basically upon her birth. While she has not been in care for the 12-month period, the Court can glean from the situation with [M.R.] that the parents are not going to be in a position to address her needs either. She's even younger and therefore more vulnerable. However, given that she has not been in care for 12 months, the Court cannot find that (8) applies to [C.R.]'s case. The Court can, however, find that (8) applies to [M.R.]'s case.

As stated previously, the Court only needs to find one ground to terminate, so clearly that exists for both children as it relates to both parents

at this point in time.

Again, the Court stresses that this is not about love, as the Court believes that the parents love the children, and this is not, especially in Mother's case, about a lack of effort because the Court believes that Mother has made or used significant effort, it is about their limitations creating a case where they cannot meet the needs of the children at this point in time.

Moving on to Section (b), the Court must also give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent cannot be terminated solely on a basis of environmental factors, such as inadequate housing, furnishings, income, clothing and medical care, if found to be beyond the control of the parent.

One thing that the Court finds may have been difficult for both parents is that they have not had the best role models themselves in terms of parenting. To describe the conditions of maternal grandmother's house indicates to the Court that not only are those the conditions that the parents were more or less economically trapped in to raise their children,

8

those are the conditions in which maternal grandmother felt it was appropriate to raise Mother.

The Court appreciates that the Catholic Charities team has tried to address hygiene issues, but that is very difficult when her role model was raising her in an environment where it was okay to have pet feces on the floor, urine in bottles around the house, sewage throughout the house and other environmental issues.

While parents were limited to start, the Court does not feel that maternal grandmother's house in particular created an effective role model for Mother which only further complicated what she needed to know in order to raise her children in a different environment.

Nonetheless, while the Court is sympathetic to mother's position at this point and the substantial burdens that she has faced and continues to face, the Court must be concerned about the best interests of her children.

The children have bonded with the foster parents. In fact, both of them throughout their lives have been primarily in the care of the foster parents.

9

Notably, the caseworker described [M.R.]'s bond with Mother as a familiarity bond that may not be significantly different from the one that [M.R.] has with the caseworker herself. The caseworker indicated that the most significant relationships are with the foster family, that that is the family with whom she has an extremely strong bond and the Court believes that it would be detrimental to pull her from that situation at this point in time.

Because of the age of the children when they began living with the foster parents, if the children have a significant bond, at this point it is with the foster parents. The Court believes that the caseworker's description of a familiarity bond is credible as it relates to Mother's bond.

The caseworker further testified that the child may not even have that level of a bond with Father given his unwillingness or inability to interact with [M.R.] even in a supervised setting and his deference to Mother's responsibilities in that situation.

Therefore, it does appear to be in the best interests of the children considering their bonds with the foster parents as well as a lack of anything

10

beyond a familiarity bond with the parents to move forward with the termination.

Therefore, at this time the Court will find that it is in the best interests of the children to terminate the parental rights of both Mother and Father as it relates to [C.R.] and to [M.R.].

Moving next to the issue of the change of goal for [M.R.], having found that termination of parental rights is appropriate at this time as well as for the reasons previously stated, the Court finds that it is in the best interests of [M.R.] for her goal to be changed to adoption. Again, her strongest bond is with her foster family. That is the only family she has known at this point.

Despite the committed efforts of Catholic Charities, they have been unable to assist the parents in moving beyond the supervised visits and the Court finds that further services would be unlikely to move the parents in a reasonable time to the point that they could care for these children 24/7.

Therefore, at this point the Court finds that [M.R.]'s goal is changed to adoption.

Moving next to the status for both

11

children, having changed the goal and terminated the parental rights of the parents, further services will no longer be needed with regard to addressing the goal of reunification.

It is clearly in the best interests of the children to remain in their current foster home. Therefore, the status quo in the foster home with the services that they have will be maintained going forward.

While these situations are very emotional, and the Court notes that it has been a very emotional hearing for Mother especially, the Court hopes that they can take some comfort in knowing that their children are in a good place.

The Court has no doubt, and again hopes the parents take comfort, that the foster parents have provided a loving and stable environment and will continue to do so going forward.

Sometimes giving up children can be a very loving act and knowing that they have landed someplace hopeful for them, while not ideal, should provide some comfort.

12

BY THE COURT:

_____
Kathleen J. Prendergast,
Judge

kb
7/21/17
In the Interest of [M.R.] & [C.R.]
No. DP-155-2016 & DP-138-2017

13